UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VALERY LATOUCHE,

                    Plaintiff,

          -against-

ROCKLAND COUNTY; ROCKLAND
COUNTY JAIL; JOHN MORLEY, Chief
Medical Officer; DEPARTMENT OF
CORRECTIONAL SERVICES; DR.
JACOBSON, DDS, Sing Sing Correctional
Facility; TUSHAR UDESHI, DDS, Sing Sing
Correctional Facility,

                    Defendants.

22-CV-1437 (LTS)

ORDER TO AMEND

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff, who is currently incarcerated at Sing Sing Correctional Facility (Sing Sing),

brings this *pro se* action under 42 U.S.C. § 1983, asserting numerous claims that are wholly

unrelated to one another. Plaintiff brings claims arising from his 2004 arrest, and he challenges

his 2005 conviction. Plaintiff also brings claims about his medical care, which he asserts against:

(1) two dentists who allegedly provided "negligent" dental care in 2016, at Sing Sing; and (2) the

Rockland County Jail, the New York State Department of Corrections and Community

Supervisions (DOCCS),[1] and DOCCS Chief Medical Officer John Morley in connection with

medical treatment of Plaintiff's hair loss, eczema, and gynecomastia.

By order dated March 14, 2022, the Court granted Plaintiff's request to proceed *in forma*

*pauperis* (IFP), that is, without prepayment of fees.[2]

---

[1] Plaintiff names as a defendant "Department of Correctional Services," which the Court
understands to refer to the DOCCS, rather than the New York City Department of Correction.

[2] Prisoners are not exempt from paying the full filing fee even when they have been
granted permission to proceed *in forma pauperis*. *See* 28 U.S.C. § 1915(b)(1).

**STANDARD OF REVIEW**

The Prison Litigation Reform Act requires that federal courts screen complaints brought by prisoners who seek relief against a governmental entity or an officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The Court must dismiss a prisoner's *in forma pauperis* complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The Court must also dismiss a complaint if the court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

**BACKGROUND**

Plaintiff Valery LaTouche alleges the following facts, which the Courts accepts as true for purposes of screening the complaint.

### 1. False Arrest

In 2004, Plaintiff was at a friend's house in New City, Rockland County, New York. (ECF 1 at 2.) There was a "police raid," and Plaintiff was "unreasonably seized by a Ramapo police officer." (*Id.*) He was arrested and charged with unlawful possession of weapons. Later, at

a preliminary hearing, the charges against Plaintiff were dismissed based on information that he
did not reside in the home.

In 2005, Plaintiff was arrested on an "active warrant" arising from the 2004 police raid,
which "was used as cause" to detain him in connection with the charges for which he is currently
serving a sentence.[3] Plaintiff obtained, in 2021, a certificate of dismissal from the Ramapo Town
Court in connection with the weapons possession charges. Plaintiff sues the County of Rockland
for false imprisonment and violations of his rights under the Fourth Amendment in connection
with this 2004 arrest, for which the charges were dismissed.

### 2. Challenge to 2005 Conviction

Plaintiff asserts claims against Defendant "Rockland County Supreme Court," in
connection with Justice Kevin Russo's handling of Plaintiff's post-conviction motions, under
New York Criminal Procedure Law § 440.10.

Plaintiff contends that the Rockland County District Attorney, in opposing Plaintiff's
December 18, 2018 motion to vacate his conviction, ignored the arguments that Plaintiff was
actually innocent and disputed that defense counsel was ineffective in failing to present evidence
of Plaintiff's "low intellectual disability." (*Id.* at 4, ¶ 19.) Justice Russo denied Plaintiff's motion
under New York Criminal Procedure Law § 440.10(3)(c) based on Plaintiff's failure to have
raised these arguments in his earlier § 440.10 motions. (*Id.* at 4, ¶ 20.) Justice Russo also denied

---

[3] In the report and recommendation addressing Plaintiff's petition for a writ of *habeas corpus* under 28 U.S.C. § 2254, the court noted that Plaintiff was arrested because a plainclothes officer believed that there was an outstanding warrant from Clarkstown for his arrest, but he was released when it was determined that the warrant was no longer valid. *See LaTouche v. Graham*, No. 7:10-CV-01388, 44 (PED) (S.D.N.Y. Mar. 8, 2013) (R & R at 3-4), *adopted* (ECF 55) (S.D.N.Y. Sept. 24, 2013).

the motion for rehearing, and the Appellate Division, Second Department, denied leave to appeal.

Plaintiff also filed applications in state court arguing (1) that his § 440.10 motion should not have been heard by Justice Russo, whose law clerk was a former prosecutor who had previously worked for a judge who is biased against Plaintiff (Justice Kelly); and (2) that the Grand Jury proceedings were flawed. Plaintiff seeks only damages in this complaint and has not requested any other relief in connection with these claims against the Rockland County Supreme Court.

### 3.   Medical Treatment

During Plaintiff's confinement as a pretrial detainee at Rockland County Jail in 2005, he was diagnosed with depression and placed on suicide watch. Plaintiff was prescribed two antidepressant medications: Rameron and Atrax. (*Id.* at 6, ¶ 25.) In May 2005, a doctor at the jail diagnosed Plaintiff with gynecomastia "as a result of his [in]gestion of Rameron." (*Id.* at ¶ 26.) Plaintiff was referred "to a surgeon for a biopsy." (*Id.* at ¶ 27.) Before the biopsy took place, Plaintiff was convicted and taken into DOCCS custody. (*Id.*)

DOCCS initially housed Plaintiff at Downstate Correctional Facility, where he "repeatedly sought medical attention for his gynecomastia." (*Id.*) On an unspecified date, after Plaintiff was transferred to Sing Sing, he asked Doctors Kwan, Bigaud, and Ezeke for medical treatment because he had pain when lying on his chest. Plaintiff had a mammogram, which had a "negative result." (*Id.* at 6.) Plaintiff continued to complain about the gynecomastia, and gave Sing Sing physician Dr. Muthra, who is not named as a defendant in this action, documents from Rockland County Jail that showed his earlier referral for a biopsy. Dr. Muthra explained that the "Albany official" denied Plaintiff's request for a biopsy based on the results of the mammogram and because treatment for the breast enlargement itself is considered a "cosmetic procedure." (*Id.*

at 6, ¶ 29.) Plaintiff brings claims against Rockland County Jail, DOCCS, and its Chief Medical

Officer John Morely for failing to treat his gynecomastia.

On August 30, 2021, Dr. Muthra told Plaintiff that there was "a spike in his hormonal

glands," which can indicate a "possible benign tumor." (*Id.*) Plaintiff was sent to an outside

hospital for an MRI. (*Id.* at 7.) At Plaintiff's next medical visit, when he inquired about the MRI

results, Dr. Muthra told Plaintiff that his earlier abnormal "blood test w[as] likely a lab error,"

but that he would continue to monitor Plaintiff's status. (*Id.*)

On an unspecified date, Plaintiff told "his medical provider" at Sing Sing that he had a

recurring skin rash, and it was diagnosed as eczema. (*Id.* at 7, ¶ 32.) Plaintiff continued to

complain about itching, apparent "ringworm," and hair thinning and bald spots on his scalp and

beard. Dr. Muthra prescribed a topical cream (fluocinolone acetonide) for Plaintiff, and he was

given "tar shampoo" and lotion with vitamin E. Plaintiff asked for a biopsy and dermatologist

visit, but these requests were denied, and Plaintiff was told that "the Albany official considers his

condition to be cosmetic." (*Id.* at ¶ 33.) Plaintiff asserts claims against DOCCS and its Chief

Medical Officer, John Morley, for denying him "over the counter drug[s] minoxidil,

corticosteroid, [and] antholin for his scalp." (*Id.* at 31.)

**4.  Dental Care at Sing Sing in 2016**

On April 4, 2016, at Sing Sing, Dr. Allen Jacobson examined Plaintiff's teeth and found

cavities and decay. (*Id.* at 2-3.) Two weeks later, on April 19, 2016, dental hygienist cleaned

Plaintiff's teeth. Dr. Jacobson then filled the cavity in Plaintiff's tooth #12 but warned him that

the cavity was deep, and the tooth might need to be extracted. (*Id.* at 3.) Shortly after the filing,

"the tooth became infected," and Plaintiff suffered "extreme sensitivity" and shooting pain. On

July 18, 2016, Dr. Jacobson attempted to "file down" the injured tooth. X-rays were taken and

these showed that "cavities surrounding the tooth" caused scraping near the nerve. Dr. Jacobson

advised Plaintiff that the tooth needed to be extracted, but Plaintiff refused and asked him to
"cur[e] the infection." (*Id.*) Dr. Jacobson prescribed penicillin and ibuprofen.

On July 22, 2016, another dentist at Sing Sing, Dr. Udeshi, told Plaintiff that tooth #12
needed to be extracted. Plaintiff told Dr. Udeshi that the medication that Plaintiff had taken was
provided to "save the tooth," and he refused the extraction. (*Id.* at 3.)

In 2021, the filling in tooth #12 fell out. Dr. K. Rakib examined Plaintiff and found deep
cavities in the "tooth opposite . . . tooth #12." (*Id.* at 3-4.) Plaintiff told Dr. Rakib that he had
been unable to chew on his left side, where tooth #12 was located, due to the "destructive dental
filling." (*Id.* at 4.) As a result, he chewed on the other side of his mouth, which "cause[d] the
decay in the tooth opposite #12." (*Id.*) On January 21, 2022, Plaintiff's tooth #12 was extracted.
Plaintiff asserts claims against Doctors Jacobson and Udeshi for "negligen[ce]" and failing to
provide "adequate dental treatment." (*Id.* at 2.)

Plaintiff brings this complaint against Defendants Rockland County, Rockland County
Jail, Dentists Jacobson and Udeshi, DOCCS and DOCCS Chief Medical Officer John Morley.
Plaintiff seeks $35 million in damages.

## DISCUSSION

### A.    Timeliness

Many of Plaintiff's claims under section 1983 appear to be time-barred. The statute of
limitations for section 1983 claims is found in the "general or residual [state] statute [of
limitations] for personal injury actions." *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir.
2002) (quoting *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)). In New York, that period is three
years. *See* N.Y. C.P.L.R. § 214(5). Section 1983 claims generally accrue when a plaintiff knows
or has reason to know of the injury that is the basis of the claim. *Hogan v. Fischer*, 738 F.3d 509,
518 (2d Cir. 2013). Plaintiff knew of his injuries when they occurred, and his claims therefore

accrued at that time. Plaintiff's claims arising more than three years before he filed this complaint on February 22, 2022 therefore are time-barred, including his claims arising from his 2004 arrest, his 2005 conviction, his medication with Rameron at Rockland County Jail in 2005, and his dental treatment in 2016.

Because the failure to file an action within the limitations period is an affirmative defense, a plaintiff is generally not required to plead that the case is timely filed. *See Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007). Dismissal is appropriate, however, where the existence of an affirmative defense, such as the statute of limitations, is plain from the face of the pleading. *See Walters v. Indus. and Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011) ("[D]istrict courts may dismiss an action *sua sponte* on limitations grounds in certain circumstances where the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted.") (internal quotation marks and citation omitted); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (affirming *sua sponte* dismissal of complaint as frivolous on statute of limitations grounds); *see also Abbas*, 480 F.3d at 640 (concluding that district court should grant notice and opportunity to be heard before dismissing complaint *sua sponte* on statute of limitations grounds).

If Plaintiff amends his complaint, and the amended complaint includes any claim arising more than three years before he filed the original complaint on February 22, 2022, he must include any facts showing why the claim should not be deemed time-barred. The doctrine of equitable tolling permits a court, "under compelling circumstances, [to] make narrow exceptions to the statute of limitations in order 'to prevent inequity.'" *In re U.S. Lines, Inc*., 318 F.3d 432, 436 (2d Cir. 2003) (citation omitted). The statute of limitations may be equitably tolled, for example, when a defendant fraudulently conceals from a plaintiff the fact that the plaintiff has a

cause of action, or when the plaintiff is induced by the defendant to forego a lawsuit until the statute of limitations has expired. *See Pearl*, 296 F.3d at 82-83.[4]

As set forth below, even if Plaintiff's claims were not time-barred, the allegations of the complaint generally fail to state a federal claim on which relief can be granted or are otherwise not cognizable in an action under section 1983.

**B.      False Arrest in 2004**

The Court first looks to state law to establish the elements of a false arrest claim under section 1983. *See Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 925 (2017) ("[T]o flesh out the elements of this constitutional tort, we must look for 'tort analogies.'"); *see also Lanning v. City of Glens Falls*, 908 F.3d 19, 25 (2d Cir. 2018) (holding that common law principles are meant simply to guide rather than to control the definition of Section 1983 claims and courts should not "mechanically apply" the law of New York State).

Under New York law, to state a claim for false arrest, a plaintiff must show that: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Liranzo v. United States*, 690 F.3d 78, 95 (2d Cir. 2012). An arrest is privileged if it is based on probable cause. *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007).

Officers have probable cause to arrest when they "have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a

---

[4] In addition, New York provides by statute for other circumstances in which a limitations period may be tolled. *See, e.g.*, N.Y. C.P.L.R. § 204(a) (where commencement of an action has been stayed by court order), *id.* at § 204 (where a dispute has been submitted to arbitration but is determined to be non-arbitrable), id. at § 207(3) (defendant is outside New York at the time the claim accrues), *id.* at § 208 (plaintiff is disabled by infancy or insanity).

crime." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (emphasis and citation omitted). "Probable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." *Bernard v. United States*, 25 F.3d 98, 102 (1994); *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (holding that a police officer is "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.").

Here, Plaintiff alleges that he was arrested after a "raid" on a home where unlawful weapons were found, and that the charges against him were dismissed when he demonstrated that he did not reside in the home. The fact that the charges against Plaintiff were dismissed, without more, is insufficient to plead plausibly that the Ramapo police officer who arrested Plaintiff lacked probable cause to do so.

Moreover, Plaintiff has not sued an individual officer who allegedly made a wrongful arrest. Instead, he brings this claim against the County of Rockland. To state a claim against a municipality, such as the County of Rockland, a plaintiff must allege that the municipality itself violated Plaintiff's rights. *See Connick v. Thompson,* 131 S. Ct. 1350, 1359 (2011). It is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. To state a § 1983 claim against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *See Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403 (1997) (internal citations omitted).

Even if Plaintiff had adequately alleged that a police officer violated his rights, which he has not done, that allegation would be insufficient to provide a basis for liability on the part of

the County of Rockland. Plaintiff does not include any allegations that any policy, custom, or practice on the part of Rockland County violated his rights in connection with this 2004 arrest. Plaintiff thus fails to state a claim against the County of Rockland based on his 2004 arrest on charges that were later dismissed.

Plaintiff also suggests that this wrongful arrest in 2004 was used in 2005 as a pretense to arrest him for the charges for which he is currently serving a prison sentence. A prisoner cannot pursue civil rights claims that would necessarily be inconsistent with a conviction. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). Moreover, even where a civil rights claim would lie, a plaintiff cannot seek relief for "the 'injury' of being convicted and imprisoned (until his conviction has been overturned)." *Id*. at 477, n. 7. Plaintiff's 2005 conviction has not been overturned, and any claim for damages for the injury of serving this sentence would be inconsistent with this conviction.

As set forth above, these claims had been time-barred for nearly 15 years when Plaintiff filed this complaint. It therefore would be futile for Plaintiff to replead these claims, unless he has some adequate basis for equitable tolling.

## C.      Challenge to 2005 Conviction

Plaintiff brings civil rights claims regarding the denial of his post-conviction motions against Defendant "Rockland County Supreme Court." As an initial matter, "state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity . . . ." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id*.

The Supreme Court of the State of New York, Rockland County, is a part of the New York State Unified Court System, and, as such, is an arm of the State of New York. *Id.* at 368 (explaining that a court that is part of the New York State Unified Court System "is unquestionably an 'arm of the State,' entitled to Eleventh Amendment sovereign immunity."). New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977). The Eleventh Amendment therefore bars Plaintiff's section 1983 claims against the Rockland County Supreme Court.

Moreover, Plaintiff's allegations that Justice Russo wrongfully denied his § 440.10 motions are not cognizable in a civil rights action under section 1983. A prisoner can challenge the validity of his state conviction in federal court, or obtain release from custody, only by bringing a petition for a writ of *habeas corpus* under 28 U.S.C. § 2254. *See Wilkinson v. Dotson*, 544 U.S. 74, 78-82 (2005) (citing *Preiser v. Rodriguez*, 411 U.S. 475 (1973)) (noting that writ of *habeas corpus* is sole federal remedy for prisoner seeking to challenge the fact or duration of his confinement). Plaintiff's section 1983 claims challenging his conviction must therefore be dismissed for failure to state a claim on which relief can be granted and because defendant is immune from suit. 28 U.S.C. § 1915(e)(2)(b)(ii)-(iii).

The Court also declines to recharacterize these claims as arising under section 2254, because Plaintiff has already challenged his 2005 conviction in a petition for a writ of *habeas corpus* under 28 U.S.C. § 2254, which was denied on the merits. *See LaTouche v. Graham*, No. 7:10-CV-01388, 44 (PED) (S.D.N.Y. Mar. 8, 2013) (R & R at 3-4), *adopted* (ECF 55) (S.D.N.Y. Sept. 24, 2013), *certificate of appealability denied*, No. 13-3720 (2d Cir. Mar. 13, 2014), *lv to file successive petition denied*, No. 15-3662 (2d Cir. Dec. 7, 2015), *certificate of appealability*

11

*denied*, No. 16-2885 (2d Cir. Feb. 13, 2017) (appeal of denial of Rule 60(b) motion), *lv to file successive petition denied*, No. 19-4006 (2d Cir. Jan 21, 2020). Plaintiff would require permission from the Court of Appeals to bring a new petition for a writ of *habeas corpus* under section 2254.

**D.      Deliberate Indifference to Serious Medical Needs**

Plaintiff alleges that several defendants were deliberately indifferent to his serious medical needs. Such claims arise under the Due Process Clause of the Fourteenth Amendment, if Plaintiff was a pretrial detainee at the time of the events giving rise to his claims, and under the Eighth Amendment, if he was a convicted prisoner. *Bell v. Wolfish*, 441 U.S. 520, 536 n.16 (1979); *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). Whether Plaintiff was a pretrial detainee or convicted prisoner, he must satisfy two elements to state such a claim: (1) an "objective" element, which requires a showing that the challenged conditions are sufficiently serious, and (2) a "subjective" or "mental" element, which requires a showing that the officer acted with at least deliberate indifference to the challenged conditions. *Darnell*, 849 F.3d at 29.

The objective element of a deliberate indifference claim is the same for pretrial detainees and convicted prisoners. The plaintiff's medical need must be a "sufficiently serious" condition that "could result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)); *see also Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (noting that standard contemplates "a condition of urgency, one that may produce death, degeneration, or extreme pain").

The "subjective" or "mental" element varies depending on whether a plaintiff is a pretrial detainee or convicted prisoner. A convicted prisoner must allege that a correction official actually "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Darnell*, 849

F.3d at 32 (quoting *Farmer*, 511 U.S. at 837). That is, a convicted prisoner must allege that the official was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also [have] draw[n] the inference." *Id*. By contrast, a pretrial detainee need allege only that the official intentionally or recklessly failed to act with reasonable care "even though the defendant-official knew, *or should have known*, that the condition posed an excessive risk to health or safety." *Id.* at 35 (emphasis added).

The mere negligence of a correction official is not a viable basis for a claim of a federal constitutional violation under section 1983, under either the Eighth or the Fourteenth Amendment. *See Daniels v. Williams*, 474 U.S. 327, 335 (1986); *Davidson v. Cannon*, 474 U.S. 344, 348 (1986).

### 1.  Dental Care

Plaintiff was a convicted prisoner as of 2016, when his claims for constitutional violations in connection with his dental care first arose. Plaintiff adequately alleges at this stage that his dental problems were a serious medical need. *See Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000) (holding that a tooth cavity is a serious medical condition, not because cavities are always painful or otherwise dangerous, but because a cavity that is not treated will probably become painful or otherwise dangerous). Plaintiff therefore has pleaded facts showing that the objective prong of a deliberate indifference claim is satisfied.

Plaintiff fails, however, to plead any facts giving rise to an inference that either dentist acted with the subjective intent required for deliberate indifference. He states that Dr. Jacobson filled the cavity in Plaintiff's tooth #12 but warned him that the cavity was deep, and that the tooth might need to be extracted, which later proved true; Plaintiff nevertheless refused to have it extracted, and Dr. Jacobson prescribed penicillin and ibuprofen for the infection. These allegations do not show that Dr. Jacobson "kn[ew] of and disregard[ed] an excessive risk to

inmate health or safety." *Darnell*, 849 F.3d at 32. On the contrary, it appears that Plaintiff acted

against Dr. Jacobson's advice, and Dr. Jacobson then took steps to mitigate the danger to

Plaintiff.

Plaintiff further alleges that, on July 22, 2016, Dr. Udeshi told Plaintiff that tooth #12

needed to be extracted, but Plaintiff refused the extraction. (ECF 2 at 3.) Plaintiff brings claims

against Doctors Jacobson and Udeshi for "negligen[ce]" and failing to provide "adequate dental

treatment." (*Id.* at 2.) These allegations are insufficient to support a claim of a constitutional

violation, both because Plaintiff alleges that he was the one who refused the tooth extraction and

because allegations of negligence are insufficient to state a claim that a defendant actually

"kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Darnell*, 849 F.3d at

32. Plaintiff's section 1983 claims against Doctors Jacobson and Udeshi must therefore be

dismissed for failure to state a claim on which relief can be granted.

### 2.  Cosmetic Conditions

Plaintiff alleges that Defendants have denied him adequate treatment for his hair loss and

eczema because these are cosmetic conditions. "Because society does not expect that prisoners

will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of

serious illness or injury to state a cognizable claim." *Washington v. Fludd*, No. 18-CV-1273(JS)

(SIL), 2019 WL 1643542, at *3 (E.D.N.Y. Apr. 16, 2019) (quoting *Smith v. Carpenter*, 316 F.3d

178, 184 (2d Cir. 2003) (internal quotation marks and additional citation omitted; alteration in

original)). A "cosmetic" condition can rise to the level of seriousness needed to establish a duty

of care if: (1) a reasonable doctor would perceive the condition as important and worthy of

treatment; (2) the condition significantly affects the prisoner's daily activities; and (3) the

condition results in chronic and substantial pain. *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir.

2003).

Plaintiff alleges that he suffers from hair thinning and bald spots on his scalp and beard. Hair loss is generally not deemed a serious medical condition. *See, e.g., Guthrie v. US Fed. Bureau of Prisons*, No. 09-CV-990 (LAP), 2010 WL 2836155, at *5 (S.D.N.Y. July 7, 2010) (holding that "[t]he BOP's duty of care to provide for the safekeeping of its prisoners does not require them to provide medication that is cosmetic in nature, including administering hair loss medication), *aff'd*, 421 F. App'x 120 (2d Cir. 2011). Plaintiff does indicate that he has "itching" on his scalp or beard, and apparent "ringworm," but these allegations do not show that he was in chronic or substantial pain at any relevant time or that the condition significantly affected his daily activities. He thus fails to plead facts showing that this was a sufficiently serious medical condition that satisfies the objective component of a deliberate indifference claim.

Plaintiff also alleges that he was diagnosed with eczema. Skin conditions can be sufficiently serious to satisfy the objective component of a deliberate indifference claim. *Brock*, 315 F.3d at 163 (holding that prisoner's thick keloid scar that was  a source of chronic pain was a serious medical condition). Plaintiff alleges, however, that Dr. Muthra prescribed treatment with a topical cream (fluocinolone acetonide), "tar shampoo," and lotion with vitamin E. Although Plaintiff contends that he was denied a biopsy, a dermatologist visit, and "over the counter drug[s] minoxidil, corticosteroid, [and] antholin for his scalp" (*id.* at 31), it is well established that "[d]isagreements over medications . . . forms of treatment, or the need for specialists  . . . are not adequate grounds for a Section 1983 claim." *See Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001). Plaintiff's allegations are therefore insufficient to state a claim for deliberate indifference in connection with his hair loss or eczema.

### 3.  Gynecomastia

 Plaintiff alleges that while he was a pretrial detainee at Rockland County Jail, in 2005, he was prescribed a psychiatric drug (Rameron) that caused breast enlargement, known as

gynecomastia. He was referred for a biopsy but was transferred to the custody of DOCCS in May 2005, before it took place. Plaintiff sues Rockland County for administering a drug that caused him harm.

Plaintiff's allegations might be construed as a claim for violation of the Fourteenth Amendment right to information about potential side effects of the medication. *See Pabon v. Wright*, 459 F.3d 241, 250-51 (2d Cir. 2006) ("In order to permit prisoners to exercise their right to refuse unwanted treatment, there exists a liberty interest in receiving such information as a reasonable patient would require in order to make an informed decision as to whether to accept or reject proposed medical treatment.").[5] Because Plaintiff alleges that he knew of this harm in 2005, it appears that his claim accrued at that time. The three-year limitations period for a section 1983 claim therefore barred this claim when he filed the complaint in 2022. Plaintiff should not replead this claim in his amended complaint, unless he can plead facts showing equitable tolling of the limitations period.

Plaintiff alleges that the DOCCS and its Chief Medical Officer have denied treatment for gynecomastia on the ground that it is a cosmetic condition. In cases where a prisoner alleges that gynecomastia "significantly affects daily activities" or cause him "chronic and substantial pain," gynecomastia may qualify as a serious medical condition. *See, e.g.*, *Blaine v. Burnes*, No. 3:20-CV-1039 (KAD), 2020 WL 5659101, at *6 (D. Conn. Sept. 23, 2020) ("While Gynecomastia can cause pain or discomfort, and can result in discharge from the nipple, [plaintiff] alleges none of these infrequent side effects."); *Washington v. Fludd*, 2019 WL 1643542, at *3 (dismissing

---

[5] To establish a claim for violation of the Fourteenth Amendment right to medical information, "a prisoner must show that (1) government officials failed to provide him with such information; (2) this failure caused him to undergo medical treatment that he would have refused had he been so informed; and (3) the officials' failure was undertaken with deliberate indifference to the prisoner's right to refuse medical treatment." *Pabon*, 459 F.3d at 250-51.

plaintiff's Eighth Amendment claim based on gynecomastia as a Risperdal side effect for failure to allege facts sufficient to meet the objective component). Plaintiff's allegations are insufficient to show that his breast enlargement "significantly affects daily activities" or causes him "chronic and substantial pain." *Moore*, 2008 WL 4186340 at *6 (citing Brock, 315 F.3d at 162-63).

Because Plaintiff may be able to allege facts showing that this is a sufficiently serious condition that is not merely cosmetic, and that defendants are actually aware that this condition is more than cosmetic, the Court grants Plaintiff leave to amend to replead this claim against Chief Medical Officer John Morley or other individuals who were personally aware of a serious medical condition related to Plaintiff's gynecomastia and were deliberately indifferent to the risk to him of serious harm.

### E.    Leave to Amend

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state a valid claim about his medical conditions, the Court grants Plaintiff 60 days' leave to amend his complaint to detail his claims.

Plaintiff is granted leave to amend his complaint to provide more facts about his claims. In the "Statement of Claim" section of the amended complaint form, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant. If

Plaintiff has an address for any named defendant, Plaintiff must provide it. Plaintiff should include all of the information in the amended complaint that Plaintiff wants the Court to consider in deciding whether the amended complaint states a claim for relief. That information should include:

a)  the names and titles of all relevant people;

b)  a description of all relevant events, including what each defendant did or failed to do, the approximate date and time of each event, and the general location where each event occurred;

c)  a description of the injuries Plaintiff suffered; and

d)  the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

Essentially, Plaintiff's amended complaint should tell the Court: who violated his federally protected rights and how; when and where such violations occurred; and why Plaintiff is entitled to relief.

Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wants to include from the original complaint must be repeated in the amended complaint.

## CONCLUSION

Plaintiff is granted leave to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within sixty days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 22-CV-1437 (LTS). An Amended Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the complaint will be dismissed for failure to state a claim upon which relief may be granted.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated:   March 29, 2022
        New York, New York

                                       /s/ Laura Taylor Swain
                                       LAURA TAYLOR SWAIN
                              Chief United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____
Write the full name of each plaintiff.


-against-

_____

_____

_____

_____
Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.

_____CV_____
(Include case number if one has been assigned)

**AMENDED**
**COMPLAINT**
(Prisoner)

Do you want a jury trial?
☐ Yes    ☐ No

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

---

Rev. 5/20/16

## I.    LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.    PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

_____

First Name                Middle Initial             Last Name

_____

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

_____

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

_____

Current Place of Detention

_____

Institutional Address

_____

County, City                        State                    Zip Code

## III.    PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee
☐  Civilly committed detainee
☐  Immigration detainee
☐  Convicted and sentenced prisoner
☐  Other: _____

Page 2

## IV.   DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

First Name                    Last Name                        Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                         State                    Zip Code

Defendant 2:

First Name                    Last Name                        Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                         State                    Zip Code

Defendant 3:

First Name                    Last Name                        Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                         State                    Zip Code

Defendant 4:

First Name                    Last Name                        Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                         State                    Zip Code

## V.    STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

## VI.   RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

_____

_____

## VII.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

Prison Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

Date on which I am delivering this complaint to prison authorities for mailing: _____